## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**RAJA TALLURI ET AL.**                                    **CIVIL ACTION**

**VERSUS**                                                        **No. 23-377**

**AIG PROPERTY CASUALTY**                              **SECTION I**
**COMPANY**

### ORDER & REASONS

Three motions are before the Court. First is a motion[1] for summary judgment filed by defendant AIG Property Casualty Company ("defendant"). Plaintiffs Raja Talluri and Gayathri Talluri ("plaintiffs") oppose[2] this motion. Defendant filed a reply.[3] Second is plaintiffs' motion[4] for partial summary judgment. Defendant opposes[5] this motion, and plaintiffs filed a reply.[6] Third is plaintiffs' motion[7] *in limine* to exclude certain evidence at trial. Defendant also opposes[8] this motion, and plaintiffs filed a reply.[9] For the reasons that follow, the Court grants in part and denies in part defendant's motion for summary judgment, denies plaintiffs' motion for summary judgment, and grants in part and defers in part plaintiffs' motion *in limine*.

---

[1] R. Doc. No. 32.
[2] R. Doc. No. 41.
[3] R. Doc. No. 45.
[4] R. Doc. No. 34.
[5] R. Doc. No. 38.
[6] R. Doc. No. 46.
[7] R. Doc. No. 33.
[8] R. Doc. No. 42.
[9] R. Doc. No. 47.

## I.     BACKGROUND

This case involves an insurance dispute arising from Hurricane Ida damage to plaintiffs' property.[10] Defendant issued an insurance policy covering the property during the relevant period.[11] On September 1, 2021, plaintiffs reported Hurricane Ida damages to defendant.[12] Defendant then retained Dennis White ("White") of Alacrity Solutions, LLC to inspect the property on its behalf.[13] White inspected the property on September 24, 2021.[14] On September 26, 2021, White submitted a "First Report" to defendant.[15] The report details the damage to the property and includes multiple photos.[16] The report also states that "[a]t this time, an Engineer and Building Consultant is needed for assistance with the handling of this claim."[17] Specifically, the report asserts that "an engineer is needed to determine if the integrity of the exterior wall has been compromised[.]"[18]

On September 27, 2021, plaintiffs' counsel submitted an invoice for mitigation expenses to tarp plaintiffs' roof in the amount of $86,404 and made a demand for an additional $2,251,861.19 to replace the roof based on a bid from Precision

---

[10] R. Doc. No. 1, ¶¶ 6, 8.

[11] R. Doc. No. 32-5, ¶ 1 (defendant's statement of uncontested material facts); R. Doc. No. 41-1, ¶ 1 (plaintiffs' response to defendant's statement of uncontested material facts).

[12] R. Doc. No. 32-5, ¶ 5; R. Doc. No. 41-1, ¶ 5.

[13] R. Doc. No. 32-5, ¶ 7; R. Doc. No. 41-1, ¶ 7.

[14] R. Doc. No. 32-5, ¶ 8; R. Doc. No. 41-1, ¶ 8.

[15] R. Doc. No. 34-10.

[16] *See generally id.*

[17] *Id.* at 2.

[18] *Id.*

Construction and Roofing ("Precision").[19] On September 30, 2021, the adjustment of the claim was reassigned to Leif Eklund ("Eklund"), defendant's employee because the claim was too large for White.[20] On October 1, 2021, Eklund sent a letter to plaintiffs' counsel.[21] The letter "acknowledge[d] [plaintiffs'] demand for policy limits as well as [plaintiffs'] Proof of Loss for the roof only of $2,338.273.19."[22] The letter stated that defendant "reject[ed] both in their entirety" because defendant was still in the process of investigating the claims and developing estimates.[23] However, the letter also stated that defendant accepted the emergency tarp costs of $86,404 and explained that defendant would "be issuing a $20,000 advance for immediate needs."[24] Also on October 1, 2021, defendant issued a $106,404 payment to plaintiffs.[25]

Additionally, on the same day, H&A Consulting International ("H&A") received a request from Eklund "to perform an origin and cause investigation" of the property.[26] "The scope of the investigation was to determine the origin and cause of the reported damage to the building, and whether the damage can be attributed to the impact of Hurricane Ida."[27] On October 5, 2021, defendant conducted its second

---

[19] R. Doc. No. 32-3, ¶ 7.
[20] R. Doc. No. 32-5, ¶ 10; R. Doc. No. 41-1, ¶ 10.
[21] R. Doc. No. 32-5, ¶ 11; R. Doc. No. 41-1, ¶ 11; *see also* R. Doc. No. 32-3, at 12–13.
[22] R. Doc. No. 32-3, at 12.
[23] *Id.*
[24] *Id.*
[25] R. Doc. No. 32-1, at 5; R. Doc. No. 41, at 5.
[26] R. Doc. No. 32-3, at 21.
[27] *Id.*

inspection of the property.[28] Numerous individuals were present for this inspection, including Richard Harb of H&A and Jeffrey Chimento of J.S. Held, LLC ("JS Held").[29] On October 13, 2021, Eklund sent plaintiffs' counsel a reservation of rights letter based on the inspection.[30] The letter cited various policy exclusions and requested certain information from plaintiffs.[31]

On October 18, 2021, H&A submitted a "Forensic Engineering Report" to Eklund.[32] This report concluded that much of the damage to the property was consistent with damage caused by Hurricane Ida, but that some of it was not consistent with damage caused by high winds.[33] For example, the report explains that "cracks in the terrace and driveway tile and separation of the stair rails on the east side of the building are consistent with damage caused by differential foundation movement due to soil consolidation below the foundation and vehicle wheel load."[34]

On October 19, 2021, JS Held provided a $359,479.21 estimate for roof repairs, mailbox repairs, and other costs including dumpsters, a temporary toilet, and a temporary hand washing station.[35] On October 26, 2021, through Eklund, defendant issued a $309,479.21 payment based on this estimate minus the $50,000 deductible.[36]

---

[28] *Id.* ¶ 9.

[29] *Id.*; *see also* R. Doc. No. 32-1, at 5; R. Doc. No. 41, at 6.

[30] R. Doc. No. 32-3, ¶ 11; *see also id.* at 15–19.

[31] *See generally id.* at 15–19.

[32] *Id.* at 20–39.

[33] *See generally id.*

[34] *Id.* at 27.

[35] *Id.* at 40–46. Although plaintiffs dispute "when the estimate was received by [ ] Eklund[,]" R. Doc. No. 41-1, ¶ 15, the date-stamp on the bottom of the document reads: "10/19/2021." *See* R. Doc. No. 32-3, at 40–46.

[36] R. Doc. No. 32-3, ¶ 15.

Eklund rejected plaintiffs' $2,338,273.19 roof demand "because the roof estimate provided by [plaintiffs'] counsel was not for a like kind and quality repair."[37] Eklund "provided the estimate received from JS Held for a roof repair using roof tiles manufactured by the same manufacturer for the existing roof."[38] Eklund also reiterated his request for the information he had requested from plaintiffs in his October 13, 2021 letter but had not yet received.[39]

On November 11, 2021, Eklund received plaintiffs' public adjuster estimate for $6,713,922.27.[40] Eklund responded via email the same day and, because Eklund had not received the information he had requested in the October 13, 2021 letter from plaintiffs, he again requested the information.[41] Also on November 11, 2021, plaintiffs' counsel provided the requested information to Eklund via email.[42] Additionally, plaintiffs' counsel sent Eklund an engineering report from Patrick Snowden of Structural Alliance.[43] Eklund provided the public adjuster's estimate to JS Held and provided the engineering report to H&A.[44]

On November 29, 2021, Eklund received a report from H&A disputing the engineering report.[45] On December 1, 2021, Eklund received an updated estimate from JS Held based on its review of the H&A causation report and the public

---

[37] *Id.* at 50.
[38] *Id.* ¶ 15; *see also id.* at 50–52.
[39] *Id.* ¶ 15; *see also id.* at 50–52.
[40] *Id.* ¶ 17; *see also id.* at 190–318.
[41] R. Doc. No. 41-6, at 1–4.
[42] *Id.* at 1.
[43] R. Doc. No. 32-3, ¶ 17.
[44] *Id.*
[45] *Id.* ¶ 18; *see also id.* at 321–23.

adjuster's estimate.[46] Based on this estimate, defendant issued an additional payment of $445,304.44 on December 6, 2021.[47] Eklund also provided a detailed explanation of the payment and defendant's rejection of the public adjuster's estimate.[48]

Eklund sought contractor bids for an alternative roof replacement "[b]ecause of an ongoing dispute as to what was a like kind and quality roof replacement."[49] On December 8, 2021, Eklund received a $933,879.00 bid from Roofing Solutions, which was significantly higher than previous bids.[50] Eklund did not issue payment based on this bid and did not provide a copy of this bid to plaintiffs.[51] During his deposition, Eklund testified that this was because Eklund "didn't think it was a reasonable bid" and "it didn't make any sense to [him]."[52]

On December 9, 2021, Eklund sent the bids to JS Held.[53] On December 20, 2021, Eklund received a revised estimate from JS Held based on the newly obtained roof bids.[54] Accordingly, on December 29, 2021, Eklund sent a supplemental payment letter to plaintiffs' counsel explaining the forthcoming supplemental payment.[55] On January 4, 2022, Eklund issued a $366,710.78 additional payment.[56]

---

[46] *Id.* ¶ 19; *see also id.* at 324–85.
[47] *Id.* ¶ 20; *see also id.* at 386–87.
[48] *Id.*; *see also id.* at 388–401.
[49] *Id.* ¶ 21.
[50] R. Doc. No. 41-10; R. Doc. No. 46-7, at 18.
[51] R. Doc. No. 46-7, at 21.
[52] *Id.* at 20.
[53] R. Doc. No. 32-3, ¶ 21.
[54] *Id.* ¶ 22.
[55] *Id.* ¶ 23.
[56] *Id.* ¶ 24; *id.* at 463.

At this point, defendant had paid a total of $1,227,898.43 in undisputed damages.[57] On February 16, 2022, Eklund invoked appraisal based on the remaining disputed damages of $5,436,023.84.[58] On October 13, 2022, an umpire issued an appraisal award in the amount of $16,126,268.[59]

On November 9, 2022, defendant issued a $10,449,185.30 supplemental payment pursuant to the appraisal award.[60] The only portions of the appraisal award defendant did not pay were $1,288,378 for additional living expenses ("ALE") and $3,188,288 for guaranteed rebuilding cost ("GRC") coverage.[61] Eklund's declaration states that he "did not pay the ALE component because under the policy ALE is owed only on an incurred basis, and [plaintiffs] had not provided any documentation of any incurred ALE."[62] In his declaration, Eklund further explained that he "did not pay the GRC amount because under the policy, it is not owed unless repair or rebuilding starts, and [defendant was] not provided with any documentation that repair had started."[63]

Defendant's counsel sent a letter to plaintiffs' counsel explaining the payment and defendant's refusal to pay the ALE and GRC amounts on November 2, 2022.[64]

---

[57] *Id.* ¶ 25.

[58] *Id.* ¶ 26; *id.* at 464–66.

[59] *Id.* ¶ 27; *id.* at 467.

[60] *Id.* at 468–71. The Court notes that Eklund's declaration states this payment was in the amount of $10,371,703. *See id.* ¶ 28. However, the checks attached to Eklund's declaration indicate that defendant made two payments totaling $10,449,185.30 on November 9, 2022.

[61] *Id.* ¶ 28.

[62] *Id.*

[63] *Id.*

[64] *Id.* ¶ 29; *id.* at 472–74.

With respect to the ALE amount, the letter stated: "To the extent [plaintiffs] incur[] ALE in the future, [defendant] will pay such ALE as it is incurred and presented to [defendant]."[65] With respect to the GRC amount, the letter stated: "Please keep us posted on the status of repairs so [defendant] can make any additional payment that may be owed."[66]

Plaintiffs filed the instant lawsuit on January 30, 2023.[67] On July 5, 2023, plaintiffs' counsel sent an email "confirm[ing] that repairs to the roof [had] commenced[.]"[68] On July 28, 2023, defendant issued an additional payment of $3,188,288.26 for the additional dwelling and other structures part of the award covered by the GRC provision.[69] According to Eklund, "the only portion of the appraisal award not paid is the ALE component, as [Eklund] ha[s] not been provided with any documentation that any ALE has been incurred[.]"[70]

Defendant and plaintiffs then filed cross-motions for summary judgment and partial summary judgment. Defendant contends that the Court should grant summary judgment in its favor and dismiss all of plaintiffs' claims because it timely issued each payment after receiving satisfactory proof of loss.[71] Plaintiffs respond that defendant's payments were not timely.[72] Further, plaintiffs argue that the

---

[65] *Id.* at 473.
[66] *Id.*
[67] R. Doc. No. 1.
[68] R. Doc. No. 32-3, at 475.
[69] *Id.* at 8, ¶ 31; *id.* at 476.
[70] *Id.* at 8, ¶ 33.
[71] R. Doc. No. 32, 12–19.
[72] R. Doc. No. 41, at 8 (arguing that the October 26, 2021 payment was untimely); *id.* at 9–11 (arguing that the December 6, 2021 payment was untimely); *id.* at 11–15

question of whether defendant's refusals to pay were "arbitrary, capricious, or without probable cause" is a fact-intensive determination for the jury.[73]

In their motion for partial summary judgment, plaintiffs argue that they are entitled to summary judgment because there is no genuine dispute that three of defendant's payments—the October 26, 2021 payment, the December 6, 2021 payment, and the January 4, 2022 payment—were untimely.[74] Defendant responds that the initial inspections did not constitute satisfactory proof of loss triggering the relevant thirty- and sixty-day time periods.[75] Rather, defendant asserts that it timely issued all payments within thirty days of receiving satisfactory proof of loss, including appropriately making timely supplemental payments based on new information once it received that new information.[76]

Plaintiffs also filed a motion *in limine* seeking to exclude evidence of the cost to build the property and the existence of loans relating to the same because such evidence is irrelevant or, alternatively, because its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.[77] While defendant does not oppose the motion with respect to the existence of the loans, defendant contends that evidence of the cost to build the property is

---

(arguing that the January 4, 2022 payment was untimely); *id.* at 15–16 (arguing that the November 9, 2022 payment was untimely); *id.* at 16 (arguing that the July 28, 2023 payment was untimely).
[73] *Id.* at 18–20.
[74] *See generally* R. Doc. No. 34-1.
[75] R. Doc. No. 38, at 4–6.
[76] *Id.* at 6.
[77] R. Doc. No. 33.

relevant as it provides context for determining whether defendant's decision not to pay plaintiffs' initial demand was arbitrary and capricious and that such evidence is also relevant to questions surrounding "like kind and quality" materials.[78]

## II.     THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT

### a. Standards of Law

#### i. Summary Judgment

Summary judgment is proper when, after reviewing the materials in the record, a court determines that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of a material fact; it need only point out the absence of evidence supporting the other party's case. *Id.*; *see also Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195–96 (5th Cir. 1986) ("There is no sound reason why conclusory allegations should suffice to require a trial when there is no evidence to support them even if the movant lacks contrary evidence.").

Once the party seeking summary judgment carries that burden, the nonmoving party must come forward with specific facts showing that there is a genuine dispute of material fact for trial. *See Matsushita Elec. Indus. v. Zenith Radio*

---

[78] *See generally* R. Doc. No. 42.

*Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine dispute is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Rather, a genuine dispute of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the nonmovant fails to meet its burden of showing a genuine dispute for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075–76.

The party responding to the motion for summary judgment may not rest upon the pleadings but must identify specific facts that establish a genuine dispute. *Anderson*, 477 U.S. at 248. The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255.

### ii. Louisiana's Bad Faith Statutes

"In order to establish a cause of action for penalties and/or attorney fees and costs under [La. R.S. 22:1892, formerly] La. R.S. 22:658, a claimant must show that (1) an insurer has received satisfactory proof of loss, (2) the insurer failed to tender payment within thirty days of receipt thereof, and (3) the insurer's failure to pay is arbitrary, capricious or without probable cause." *2715 Marietta, LLC v. Axis Surplus Ins. Co.*, No. 22-3292, 2023 WL 8773747, at *4 (E.D. La. Dec. 19, 2023) (Ashe, J.) (quoting *Guillory v. Lee*, 16 So. 3d 1104, 1126 (La. 2009)) (alteration in original).

"Similarly, La. R.S. 22:1973 authorizes an award of penalties when an insurer's failure to pay a claim within [sixty] days after the receipt of a satisfactory proof of loss is 'arbitrary, capricious, or without probable cause.'" *Id.* (quoting La. R.S. 22:1973(B)(5)). "The prohibited conduct in each statute is virtually identical with the primary difference being a [thirty]- or [sixty]-day period for payment of claims." *Id.* (citing *Calogero v. Safeway Ins. Co.*, 753 So. 2d 170, 174 (La. 2000)).

"It is well settled that a 'satisfactory proof of loss' is only that which is 'sufficient to fully apprise the insurer of the insured's claims.'" *La. Bag Co. v. Audubon Indem. Co.*, 999 So. 2d 1104, 1119 (La. 2008) (quoting *McDill v. Utica Mut. Ins. Co.*, 475 So. 2d 1085, 1089 (La. 1985)). "Satisfactory proof of loss must include 'the extent of damages,' and the plaintiff bears the 'burden of proving the insurer received satisfactory proof of loss as a predicate to a showing that the insurer was arbitrary, capricious, or without probable cause.'" *Korbel v. Lexington Ins. Co.*, 308 F. App'x 800, 803 (5th Cir. 2009) (quoting *Reed v. State Farm Mut. Auto. Ins. Co.*, 857 So. 2d 1012, 1019 (La. 2003)).

"In addition, with regard to the form of a proof of loss, [the Louisiana Supreme Court] has stated that proof of loss is a 'flexible requirement to advise an insurer of the facts of the claim,' and that it need not 'be in any formal style.'" *La. Bag Co.*, 99 So. 2d at 1119 (quoting *Sevier v. U.S. Fid. & Guar. Co.*, 497 So. 3d 1380, 1384 (La. 1986)). "As long as the insurer receives sufficient information to act on the claim, the manner in which it obtains the information is immaterial." *Id.* (cleaned up).

"The phrase 'arbitrary, capricious, or without probable cause' is synonymous with 'vexatious,' and a 'vexatious refusal to pay' means 'unjustified, without reasonable or probable cause or excuse.'" *La. Bag Co.*, 999 So. 2d at 1114 (quoting *Reed*, 857 So. 2d at 1021). "[A]n insurer must pay any undisputed amount over which reasonable minds could not differ." *Marietta*, 2023 WL 8773747, at *4 (quoting *Dupree v. Lafayette Ins. Co.*, 51 So. 3d 673, 698 (La. 2010)). "[W]hen there is a 'reasonable and legitimate question to the extent and causation of a claim, bad faith should not be inferred from an insurer's failure to pay within the statutory time limits when such reasonable doubts exist.'" *Id.* (quoting *La. Bag*, 999 So. 3d at 114 and *Reed*, 857 So. 2d at 1021).

### b. Plaintiffs' ALE Claims

In its motion for summary judgment, defendant first argues that the Court should dismiss any of plaintiffs' claims related to ALE because the policy provides coverage for ALE only on an incurred basis and plaintiffs have not incurred any ALE.[79] Defendant argues both that the Court should dismiss plaintiff's claims to recover allegedly outstanding ALE under the policy and that the Court should dismiss plaintiffs' bad faith claims related to alleged earlier failures to pay owed ALE.[80]

Plaintiffs admit that they have not yet incurred ALE "for temporary housing for the restoration period."[81] However, plaintiffs contend that they incurred ALE "as

---

[79] R. Doc. No. 32-1, at 11.
[80] *Id.*
[81] R. Doc. No. 41, at 16.

it relates to [p]laintiffs' cost of generators, totaling $64,568.25."[82] Plaintiffs state that they submitted proof of "incurred ALE for generators" to defendant on November 11, 2021.[83] Specifically, in their reply brief in support of their own motion for partial summary judgment, plaintiffs assert that they submitted invoices for generators, gate motors, tracks, mounting hardware, electrical, push arms, keypads, and tennis court lights.[84] Plaintiffs argue that these items qualify as ALE because they were necessary to make the house livable and safe.[85] Plaintiffs also suggest that defendant's $20,000 payment, issued on October 1, 2022 as an "advance for immediate needs," was for ALE, though defendant claims this "advance" constituted "unallocated" funds.[86] Additionally, defendant "released unconditional tenders related to [ALE] in its November 9, 2022[] partial payment of the appraisal award."[87] While plaintiffs contend that this payment was untimely and should be subject to bad faith penalties, they do not appear to contend that defendant actually owes any presently outstanding ALE.[88]

In reply, defendant argues that Eklund legitimately disputed that the generator costs were covered by the policy.[89] Defendant also submits a supplemental declaration in which Eklund asserts that he rejected invoices submitted for the costs

---

[82] *Id.*
[83] *Id.* at 17.
[84] R. Doc. No. 46, at 6.
[85] *Id.*
[86] R. Doc. No. 41, at 16.
[87] *Id.*
[88] *See id.* at 16–17.
[89] R. Doc. No. 45, at 3.

of generators because "these costs represented an improvement" since plaintiffs did not have a generator before the storm.[90] Nevertheless, "these disputed amounts were included as part of the appraisal award, and paid in the November 9, 2022 payment."[91]

Pursuant to the policy, defendant agreed to "cover any reasonable increase in living expenses incurred by [plaintiffs] to maintain [plaintiffs'] household's usual standard of living" if a "covered loss" made plaintiffs' residence "uninhabitable."[92] As defendant points out, ALE are only owed on an incurred basis.[93] As noted, plaintiffs agree that they have not yet incurred ALE for temporary housing during the restoration period.[94] Further, plaintiffs do not appear to dispute that defendant paid for the generators and other items in the November 9, 2022 payment following the appraisal award.[95] Accordingly, the Court finds no basis for plaintiffs to recover additional ALE pursuant to the policy. To the extent that plaintiffs' complaint asserts any claims seeking additional ALE, such claims will be dismissed.

---

[90] *R.* Doc. No. 45-1, ¶ 1.

[91] *Id.* The Court notes that the appraisal award submitted to the Court as an exhibit does not explain the umpire's reasoning with respect to the generators and other items. *See* R. Doc. No. 32-3, at 467.

[92] R. Doc. No. 32-4, at 9.

[93] R. Doc. No. 32-1, at 11; *see also* R. Doc. No. 32-4, at 9.

[94] R. Doc. No. 41, at 16 ("As it relates to funds for temporary housing for the restoration period[,] [d]efendant is correct in that funds for temporary housing for the restoration period have not yet been incurred, as specific repairs which would prohibit the same have not yet occurred.").

[95] *See id.* at 17 (arguing that defendant's ALE payment "was not paid [ ] until after the appraisal award was issued on November 9, 2022").

However, plaintiffs' bad faith claims with respect to ALE raise a different question. As explained, defendant initially refused to pay for generators based on Eklund's finding that the generators represented "improvement[s] or upgrade[s]" and that the policy therefore did not cover them.[96] There is no indication that defendant cited any policy provision when it refused to issue this payment, nor is there any indication that defendant suggested a less costly reasonable alternative to maintain plaintiffs' usual standard of living at that time.

Deciding whether plaintiffs are entitled to bad faith damages with respect to the eventual ALE payment requires determining whether Eklund's explanation for denying plaintiffs' claim based on the November 11, 2021 invoices was arbitrary, capricious, or without probable cause. *See Marietta*, 2023 WL 8773747, at *4. Defendant's motion and exhibits do not establish that Eklund's determination regarding the policy's coverage of the generators was reasonably based on his interpretation of the policy such that there is no genuine dispute of material fact as to whether his refusal to pay for the generators was "vexatious." *To be clear, the Court is not holding that the purchase of a generator qualifies as ALE broadly.* Rather, the Court finds that—under the specific circumstances of this case and based on the scant ALE-related evidence submitted in support of defendant's motion—the jury must decide whether defendant legitimately disputed the generators and other expenses

---

[96] R. Doc. No. 45-1, ¶ 1. Eklund references no portion of the policy stating that defendant will not cover improvements or upgrades as part of an ALE payment.

as reasonable ALE or whether defendant's conduct was "vexatious." Accordingly, the Court will deny defendant's motion for summary judgment on this issue.

### c. Plaintiffs' Remaining Bad Faith Claims

Both defendant's motion for summary judgment and plaintiffs' motion for partial summary judgment address the question of bad faith with respect to certain payments. Defendant argues that it is entitled to summary judgment dismissing plaintiffs' claims pursuant to Louisiana's bad faith statutes because all of its payments were timely.[97] Plaintiffs contend that they are entitled to partial summary judgment on the issue of bad faith with respect to three specific payments which they argue were untimely.[98] Ultimately, the Court concludes neither party is entitled to summary judgment as to the timeliness of the October 26, 2021 payment, the December 6, 2021 payment, the January 4, 2022 payment, and a portion of the November 9, 2022 payment. However, defendant is entitled to summary judgment as to the timeliness of the October 1, 2021 payment, the remaining portion of the November 9, 2022 payment, and the July 28, 2023 payment.

#### i. October 1, 2021 Payment

On October 1, 2021, defendant issued a $106,404 payment to plaintiffs for shrink-wrapping the roof and for "immediate needs."[99] Plaintiffs do not appear to dispute that this payment—which was issued four days after plaintiffs submitted an invoice for the roof tarp and seven days after White's initial inspection—was

---

[97] R. Doc. No. 32-1, at 12–19.
[98] R. Doc. No. 34-1, at 15.
[99] R. Doc. No. 32-1, at 5; R. Doc. No. 41, at 5; R. Doc. No. 32-3, at 12.

timely.[100] Accordingly, the Court finds that there is no genuine dispute of material fact as to the timeliness of this payment and defendant is entitled to summary judgment on the question of bad faith with respect to this payment.

*ii. October 26, 2021 Payment*

On October 26, 2021, defendant issued a $309,479.21 payment to plaintiffs.[101] This payment pertained to the roof and mailbox.[102] According to plaintiffs, this payment was untimely as a matter of law because defendant received satisfactory proof of loss on September 24, 2021 when White inspected the property.[103] White's September 26, 2021 report stated that an engineer was needed "to determine if the integrity of the exterior wall [had] been compromised[.]"[104] Plaintiffs emphasize that White did not recommend or request an engineer as it relates to interior damage or other structure damage.[105] Further, plaintiffs state that White "testified that he did not observe pre-existing damage during his inspection and payment was ready to be tendered on all the damage he documented with the exception of the exterior wall as that required an engineer."[106] Plaintiffs therefore assert that defendant was obligated

---

[100] *See* R. Doc. No. 41, at 5 (discussing this payment without asserting that it was untimely).
[101] R. Doc. No. 32-3, ¶ 15; R. Doc. No. 34-7.
[102] R. Doc. No. 32-3, ¶ 15; R. Doc. No. 34-8 (transcript of Heath Blumberg's deposition), at 75.
[103] R. Doc. No. 41, at 8.
[104] R. Doc. No. 34-10, at 2.
[105] R. Doc. No. 41, at 8.
[106] R. Doc. No. 34-1, at 5–6. Plaintiffs state that White's deposition transcript was not completed at the time they filed their motion for partial summary judgment. *Id.* at 6 n.10.

to issue the payment for the roof and mailbox within thirty days of White's September 24, 2021 inspection.[107]

According to defendant, the October 26, 2021 payment was timely as a matter of law because defendant did not receive satisfactory proof of loss until it received the JS Held estimates for the roof and building damage on October 19, 2021.[108] Defendant issued payment based on the JS Held estimate for the roof seven days after this estimate was received.[109]

Although an adjuster's inspection of the property may sometimes constitute satisfactory proof of loss pursuant to Louisiana law, "this . . . does not mean that an insurer *always* receives satisfactory proof of loss as a result of its initial inspection of a damaged property." *Bainbridge, LLC v. Western World Ins. Co.*, No. 22-3296, 2023 WL 4528481, at *2 (E.D. La. July 13, 2023) (Milazzo, J.) (emphasis in original). Whether defendant received satisfactory proof of loss as to the roof or mailbox on the date of White's initial inspection is a question of fact. *See id.*

Plaintiffs cite no caselaw suggesting summary judgment in their favor is appropriate as to the alleged untimeliness of the October 26 payment, as the cases plaintiffs do cite are distinguishable.[110] Specifically, in *J.R.A. Inc. v. Essex Insurance Company*, a case involving a total loss following Hurricane Katrina, the court merely noted that an inspection may constitute satisfactory proof of loss and determined that

---

[107] *Id.* at 4–6.
[108] R. Doc. No. 38, at 6–7.
[109] R. Doc. No. 32-3, ¶ 15; R. Doc. No. 34-7.
[110] *See* R. Doc. No. 34-1, at 13, n.43.

the district court's factual finding that the original inspection constituted satisfactory proof of loss was neither "manifestly erroneous" nor "clearly wrong." 72 So. 3d 862, 881 (La. App. 4th Cir. 2011). In *Guillory v. Louisiana Farm Bureau Casualty Insurance Company*, the court similarly held that *a jury's* conclusion that an insurer's original inspection qualified as satisfactory proof of loss was not manifestly erroneous in light of the specific facts of that case. 371 So. 3d 1202, 1211 (La. App. 3d Cir. 2023).

In this case, a reasonable jury could certainly find that the initial inspection did not constitute satisfactory proof of loss because White was not qualified to provide an estimate[111] or because defendant's guidelines recommend "consider[ing] hiring a building consultant to prepare an estimate" for damages exceeding $200,000.[112] Further, a reasonable jury may find that defendant acted reasonably in promptly scheduling a second inspection with a qualified adjuster, a building consultant, and an engineer pursuant to its guidelines. *See Korbel*, 308 F. App'x at 804 (explaining that, where a property is not a total loss, an insurance company's adjusters presumably need time to complete their adjustments after inspecting). Indeed, particularly since defendant was obligated to issue payment for "like kind and quality materials," a reasonable jury may even determine that defendant did not receive satisfactory proof of loss with respect to the October 26, 2021 payment until October 19, 2021, when it received the JS Held roof estimate. In that case, defendant's October

---

[111] R. Doc. No. 38-3; R. Doc. No. 38-4; R. Doc. No. 38, at 4–5.
[112] R. Doc. No. 38-4, at 2. The Court notes that defendant's corporate representative testified that defendant learned that the claim would exceed $200,000 through plaintiffs' September 27, 2021 roof demand which exceeded $2 million. *See id.* at 3.

26, 2021 payment would have been timely, foreclosing bad faith damages. Accordingly, summary judgment for plaintiff with respect to this payment is inappropriate.

At the same time, summary judgment for defendant on this issue is also inappropriate. A reasonable jury could find that White's "First Report" constituted satisfactory proof of loss because it communicated to defendant "actual knowledge of the facts." *Bainbridge*, 2023 WL 4528481, at *2. As noted, White's "First Report" detailed damage to the property and stated that an engineer was needed only to assess the integrity exterior wall. Further, according to plaintiffs, White "testified [in his deposition] that payment was ready to be tendered on all the damage he documented with the exception of the exterior wall[.]"[113] Defendant cites no caselaw suggesting that, *as a matter of law*, information learned during an initial inspection by an adjuster does not qualify as "satisfactory proof of loss."[114] Although the question

---

[113] R. Doc. No. 34-1, at 5–6.

[114] The cases defendant relies on are not to the contrary. The *Marietta* court simply held that bad faith damages were unavailable as a matter of law where the insurance company's denial of an insured's claim was based on a legitimate dispute among experts as to the cause of the loss. 2023 WL 8773747, at *5. In that case, the insurance company "expeditiously sent an adjuster to inspect the property, and on the adjuster's recommendation, hired an engineer to provide a second opinion" before denying a claim based on the experts' findings and the policy exclusions. *Id.* Similarly, *Treigle* stands for the proposition that, where there is a legitimate dispute as to whether damages were caused by a covered loss, an insurance company does not act arbitrarily or capriciously in denying a claim. 2023 WL 3569828, at *5. By contrast, in the instant case, White—the insurance company's initial adjuster—detailed various damages to the property and asserted that they were caused by Hurricane Ida, recommended hiring an engineer only with respect to an exterior wall, later testified that further experts and inspections were unnecessary, and also testified that payment was ready to be tendered on all the damage he documented except the exterior wall.

is close, the Court finds that these facts are sufficient to create a genuine dispute as to whether the original inspection constituted satisfactory proof of loss. Accordingly, the Court will deny both plaintiffs' and defendant's motions for summary judgment as to this payment.

### iii. December 6, 2021 Payment

On December 6, 2021, defendant issued a $445,304.44 payment to plaintiffs.[115] This payment was the first payment pertaining to interior damages.[116] Defendant contends that this payment was based on an updated estimate from JS Held, which Eklund received on December 1, 2021.[117] JS Held's December 1 updated estimate was based on JS Held's review of the October 18, 2021 H&A causation report and plaintiffs' public adjuster estimate.[118] Plaintiffs sent their public adjuster estimate to Eklund on November 11, 2021.[119]

Plaintiffs contend that they are entitled to summary judgment on the question of bad faith with respect to this payment because it was untimely as a matter of law.[120] According to plaintiffs, defendant received satisfactory proof of loss as to interior damages as early as the September 24, 2021 inspection.[121] However, as the Court explained with respect to the roof, there is a genuine dispute of material fact regarding whether this initial inspection constituted satisfactory proof of loss.

---

[115] R. Doc. No. 32-3, ¶ 20; *see also id.* at 386–87.
[116] R. Doc. No. 34-1, at 8.
[117] R. Doc. No. 32-3, ¶ 19.
[118] *See id.* ¶¶ 19, 12.
[119] *Id.* ¶ 17.
[120] R. Doc. No. 34-1, at 6–8.
[121] R. Doc. No. 41, at 10–11.

Plaintiffs also suggest that defendant received various other satisfactory proofs of loss as a matter of law. First, plaintiffs assert that the October 5, 2021 inspection constituted satisfactory proof of loss.[122] However, as with the September 24, 2021 inspection, the Court finds there is a genuine dispute as to whether this inspection fully apprised defendant of the extent of the damages, particularly in light of defendant's obligation to identify "like kind and quality" materials.

Next, plaintiffs assert that the receipt of the engineering and protocol reports on October 18, 2021 and October 19, 2021 constituted satisfactory proof of loss.[123] Accordingly, plaintiffs suggest that they have established bad faith as a matter of law through the forty-three day delay between defendant's receipt of its engineering report and its December 1, 2021 estimate.[124] However, the Court finds that whether such a delay in generating expert reports qualifies as bad faith is a question for the jury, particularly since—as defendant points out—it took plaintiffs' appraisal team more than 150 days to conduct its own investigation and issue its final valuation estimate.[125] The jury must decide whether the parties were engaged in a legitimate dispute regarding the causation or extent of the damages. If so, plaintiffs are not entitled to bad faith damages as to this payment. *See Marietta*, 2023 WL 8773747, at *5 (explaining that an insurance company is not obligated to make a payment where

---

[122] *See id.* at 9–11.
[123] *Id.* at 10–11.
[124] *Id.* at 10.
[125] *See* R. Doc. No. 45, at 2–3.

there is a legitimate dispute among experts as to that payment); *Treigle*, 2023 WL 3569828, at *5 (same).

Likewise, the Court finds that defendant has failed to satisfy its burden of proving that the December 6, 2021 payment was timely based on the updated estimate. As previously explained, there is a genuine factual dispute with respect to when defendant received satisfactory proof of loss as to the interior damages included in this payment. Accordingly, the Court will deny both motions for summary judgment on the question of bad faith with respect to this payment.

### iv. January 4, 2022 Payment

On January 4, 2022, defendant issued a supplemental payment of $366,710.78 pertaining to the roof.[126] Plaintiffs and defendant each assert that they are entitled to summary judgment on the timeliness of this payment.[127] The Court has already explained that there is a genuine dispute of material fact regarding whether White's September 24, 2021 inspection constituted satisfactory proof of loss as to the roof or whether there was a legitimate dispute regarding what constituted a "like kind and quality" replacement roof. The timeliness of this supplemental roof payment is therefore also a question for the jury. Accordingly, the Court will deny both parties' motions for summary judgment with respect to this payment.

### v. November 9, 2022 Payment

---

[126] R. Doc. No. 32-3, ¶ 24; *id.* at 463.
[127] R. Doc. No. 32-1, at 7; R. Doc. No. 34-1, at 8–9.

On November 9, 2022, twenty-seven days after the umpire issued the appraisal award, defendant issued a $10,449,185.30 payment to plaintiffs.[128] Defendant asserts that it is entitled to summary judgment on the timeliness of this payment.[129] Defendant emphasizes that, once it invoked the appraisal process, "all claimed amounts [were] legitimately in dispute until after the appraisal award [was] rendered."[130] While plaintiffs do not argue that they are entitled to summary judgment on the untimeliness of this payment,[131] plaintiffs nevertheless contend that the payment was untimely as it relates to the difference between defendant's final JS Held estimate totaling $1,188,462.81 and plaintiffs' public adjuster estimate totaling $6,713,922.27.[132] However, plaintiffs do not argue that the payment was untimely as it relates to the difference between plaintiffs' public adjuster estimate and the ultimately higher appraisal award.

The Court has already determined that, on the specific facts of this case— namely, that defendant's initial report stated that an expert opinion was needed *only* as to an exterior wall—the question of when defendant received satisfactory proof of loss is a question for the jury. A reasonable jury may find that defendant received satisfactory proof of loss when it conducted the initial inspection or when it received plaintiffs' public adjuster estimate. If that is so, the jury could find that defendant

---

[128] R. Doc. No. 32-3, at 468–71.
[129] R. Doc. No. 32-1, at 7–9, 18–19.
[130] *Id.* at 18.
[131] *See* R. Doc. No. 34-1, at 15 (arguing that plaintiffs are entitled to summary judgment on the issue of bad faith with respect to three payments, not including the November 9, 2022 payment).
[132] R. Doc. No. 41, at 15–16.

acted arbitrarily and capriciously by failing to issue the portion of the November 9, 2022 payment pertaining to the difference between the JS Held estimate and the public adjuster estimate earlier or by failing to invoke appraisal until February 2022. *See, e.g.*, *Nguyen v. St. Paul Travelers Ins. Co.*, No. 06-4130, 2007 WL 1672504, at *4 (E.D. La. June 6, 2007) (Vance, J.) (explaining that insurer's invocation of appraisal four months after receiving satisfactory proof of loss was untimely).

On the other hand, a reasonable jury could find that defendant did not receive satisfactory proof of loss through the initial inspection or the public adjuster's estimate since there was a legitimate dispute between plaintiffs' experts and defendant's experts as to the extent of the damages and the appropriate payment. Accordingly, summary judgment for defendant on this question is inappropriate at this point.

### vi. July 28, 2023 Payment

The final payment at issue for purposes of the instant motions is the $3,188,288.26 payment for GRC issued on July 28, 2023.[133] Defendant contends that it is entitled to summary judgment on the question of the timeliness of this payment.[134] According to defendant, this payment was timely because the policy provides that GRC is not owed unless repair or rebuilding starts, and plaintiffs did not provide defendant with documentation that roof repairs had started until July 5, 2023.[135] Although plaintiffs do not suggest that they are entitled to summary

---

[133] R. Doc. No. 32-3, at 8, ¶ 31; *id.* at 476.
[134] R. Doc. No. 32-1, at 8–9.
[135] *See* R. Doc. No. 32-3, at 8, ¶ 28; R. Doc. No. 32-1, at 8–9.

judgment on the untimeliness of this payment,[136] plaintiffs do argue that this payment was untimely.[137] According to plaintiffs, they provided defendant with documentation that roof repairs had started when they submitted the invoice for the roof wrap on September 27, 2021.[138] In reply, defendant asserts that the roof wrap was a mitigation cost and that such mitigation costs do not constitute the commencement of repairs pursuant to the policy language.[139]

The Court finds that defendant is entitled to summary judgment as to the timeliness of this payment. As defendant observes, the policy provides that defendant "will pay Guaranteed Rebuilding Cost" and states that this "means that for a covered loss [defendant] will pay the reconstruction cost of [plaintiffs'] house or other permanent structures[.]"[140] There is no indication that the roof wrap constituted a reconstruction cost. To the contrary, the appraisal estimate upon which the appraisal award was based attributed the roofing tarp invoice as "Mitigation[.]"[141] Further, on July 5, 2023, plaintiffs' counsel sent an email stating: "This email will confirm that repairs to the roof have commenced in the above referenced claim."[142] Indeed, the subject line of that email is "Notice That Roof Repairs Have Commenced[.]"[143]

---

[136] *See* R. Doc. No. 34-1, at 15 (arguing that plaintiffs are entitled to summary judgment on the issue of bad faith with respect to three payments, not including the July 28, 2023 payment).
[137] R. Doc. No. 41, at 16.
[138] *Id.*
[139] R. Doc. No. 45, at 3–4.
[140] R. Doc. No. 32-4, at 7.
[141] R. Doc. No. 45-2, at 1.
[142] R. Doc. No. 32-3, at 475.
[143] *Id.*

Accordingly, the Court finds that there is no genuine dispute of material fact as to when defendant received satisfactory proof of loss with respect to the commencement of repair or rebuilding the roof. The evidence clearly indicates that plaintiffs advised defendant that repairs had started on July 5, 2023, and defendant timely issued payment less than thirty days later. The Court will therefore grant defendant's motion for summary judgment as to the July 28, 2023 payment.

## IV.    PLAINTIFFS' MOTION *IN LIMINE*

As noted, plaintiffs also filed a motion *in limine* to exclude evidence of the cost to build the property and the existence of loans relating to the same.[144] Specifically, plaintiffs contend that this evidence is irrelevant pursuant to Federal Rule of Evidence 401 because the cost to build the property ten years ago has no bearing on defendant's obligation to pay Hurricane Ida damages, the cost of repair or replacement damages today, or the facts surrounding whether defendant timely and adequately paid on plaintiffs' claim.[145] Even if the evidence is relevant, plaintiffs argue that it should be excluded pursuant to Rule 403 because "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury[.]"[146] Specifically, plaintiffs contend that, because the cost to build the property ten years ago is less than the cost to build it today, allowing the

---

[144] R. Doc. No. 33.
[145] *See generally* R. Doc. No. 33-1.
[146] *Id.* at 4 (quoting Fed. R. Evid. 403).

jury to hear the cost to build the property ten years ago "would only prejudice [p]laintiffs and mislead the jury."[147]

Defendant does not oppose the motion to the extent it seeks to exclude evidence about the existence of loans related to the building of the property.[148] However, defendant contends that evidence of the cost to build the property is relevant as it provides context for determining whether defendant's decision not to pay plaintiffs' initial demand was arbitrary and capricious.[149] Defendant also asserts that the evidence is relevant to determining which "like kind and quality" materials should apply to the reconstruction or repair of any storm-related damage.[150]

In reply, plaintiffs assert that defendant never stated its decision to trigger appraisal was based on its concerns about the costs claimed by plaintiffs' when compared to the cost of building the property.[151] Plaintiffs also argue that defendant has not established that the cost to build the property ten years ago has any bearing on the cost to fix the property today.[152] Plaintiffs emphasize that reconstruction cost is assessed "at the time of the loss" such that the cost to build ten years earlier is irrelevant.[153] Additionally, plaintiffs assert that the building cost does not establish what would constitute "like kind and quality" materials for individual damaged

---

[147] *Id.* at 5–6.
[148] R. Doc. No. 42, at 1–2.
[149] *Id.* at 2.
[150] *Id.* at 3.
[151] R. Doc. No. 47, at 1–2.
[152] *Id.* at 2–3.
[153] *Id.* at 3.

components of the property such as the roof, imported onyx and marble, contents, and crown molding hand painted by an artist.[154]

Pursuant to Federal Rule of Evidence 401, evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Rule 402 provides that "[i]rrelevant evidence is not admissible." Additionally, pursuant to Federal Rule of Evidence 403, courts "may exclude relevant evidence if its probative value is substantially outweighed by the danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." "The grant or denial of a motion *in limine* is considered discretionary[.]" *Hesling v. CSX Transp.*, 396 F.3d 632, 643 (5th Cir. 2005) (italics added).

Having considered the relevant standards and the parties' arguments, the Court grants the motion *in limine* with respect to the existence of loans as unopposed. However, with respect to the question of evidence regarding the cost to construct the property ten years ago, the Court finds that references to the original costs of specific materials or even the costs of building certain portions of the property may be useful in determining whether the parties legitimately disputed the costs of replacement materials and which materials would qualify as "like kind and quality" materials. At this time, the Court lacks sufficient information to make a finding pursuant to Rule 403 regarding whether the prejudicial effect of such evidence is substantially

---

[154] *Id.* at 3–4.

outweighed by the probative value of such evidence. Accordingly, the Court will defer its decision on this aspect of the motion *in limine* until trial.

## V.   CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that defendant's motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that the motion is **GRANTED** to the extent it seeks dismissal of plaintiffs' claims for ALE that have not yet been incurred and to the extent it seeks dismissal of plaintiffs' bad faith claims based on the October 1, 2023 and July 28, 2023 payments.

**IT IS FURTHER ORDERED** that the motion is **GRANTED** to the extent it seeks dismissal of any bad faith claims based on the November 9, 2022 payment except as it relates to the difference between defendant's final JS Held estimate and plaintiffs' public adjuster estimate.

**IT IS FURTHER ORDERED** that the motion is **DENIED** to the extent it seeks dismissal of plaintiffs' other claims for bad faith damages.

**IT IS FURTHER ORDERED** that plaintiffs' claims for ALE that have not yet been incurred and any claims for bad faith damages based on the October 1, 2023 payment, the July 28, 2023 payment, and the November 9, 2022 payment—except as it relates to previously described difference between the parties' estimates—are **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that plaintiffs' motion for partial summary judgment is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiffs' motion *in limine* is **GRANTED IN PART** and **DEFERRED IN PART**. The motion is **GRANTED** to the extent it seeks to exclude evidence of loans related to the construction of the property. The motion is **DEFERRED** until trial to the extent it seeks to exclude references to costs at the time of construction. The Court will consider the admissibility of such evidence following any properly made objections during the trial.

New Orleans, Louisiana, April 30, 2024.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**